**K.F.P., Plaintiff–Appellant,**

v.

**DANE COUNTY, a body corporate; Richard Raemisch, Dane County Sheriff; John Does and Jane Does 1–10, Dane County Sheriff employees/deputies, Defendants–Appellees.**

No. 96–2544.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1997.

Decided April 4, 1997.

John J. Schaan (argued), Milwaukee, WI, for Plaintiff-Appellant.

John M. Moore, David J. Pliner (argued), Bell, Metzner, Gierhart & Moore, Madison, WI, for Defendants-Appellees.

Before CUMMINGS, BAUER, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

K.F.P., victim of a rape while incarcerated at the Dane County Ferris Center, filed suit against Dane County, its sheriff, unnamed prison guards, and James Crawford, putative perpetrator of the rape. K.F.P. alleged a violation of his Eighth Amendment right to be free from cruel and unusual punishment and a negligence claim under Wisconsin tort law. Due in large part to K.F.P.'s total failure to conduct discovery, the district court granted summary judgment on the federal claim in favor of defendants-appellees, and proceeded to dismiss the state claim for lack of subject matter jurisdiction. K.F.P. ap-

peals. For the reasons articulated below, we affirm.

## I.

For operating a motor vehicle when his license had been revoked, K.F.P. served a forty-six day sentence at the Dane County Ferris Center, a dormitory-like facility used to house inmates with work release privileges. About a week into this sentence, James Crawford sexually assaulted K.F.P. A week later, Crawford threatened to attack K.F.P. again. At this time, K.F.P. filed a report of the first assault. The Ferris Center's failure to protect K.F.P. from this assault is the basis for K.F.P.'s complaint.

K.F.P. argues that Dane County officials and employees knew of the danger posed by Crawford both because of his long criminal history in Dane County dating from 1969 and because of his behavior while incarcerated. Crawford has been arrested for, among other charges, rape, breaking and entering, aggravated battery, theft, second degree sexual assault, and lewd and lascivious behavior. In 1984 and in 1988, Crawford was suspected of sexually assaulting inmates in the Dane County Jail. At the time of the assault on K.F.P., Crawford had been in custody for ten months on charges of battery and assault. During this recent period of incarceration, in addition to receiving numerous warnings and reprimands, Crawford was placed in segregation twice, locked down three times, and transferred from his cell block four times.[1] These periods of segregation and lock downs were punishment for various violations of prison rules; the cell block transfers were in response to inmate complaints regarding Crawford. More specifically, Crawford exposed himself to a security guard and, at another time, was caught "cornering" an inmate. In a report written as part of the rape investigation, an investigator commented, "Crawford is a predator by nature, who takes advantage of weaker, milder and more passive persons he comes in contact with. . . .

In a jail situation, Crawford will always try to dominate and control a cell block. He is known as a bull or cell block boss."

K.F.P. filed suit in district court in August 1995. At a preliminary pretrial conference held December 5, 1995, the parties agreed to the following schedule: any dispositive motions were to be filed by March 7, 1996, responses to which were due March 22; and discovery was to end by June 28, 1996. On January 9, defendants served a set of interrogatories and a request for production of documents on plaintiff. On March 8, 1996, defendants filed a motion for summary judgment. Appended to this motion for summary judgment were the affidavits of David Listug, a captain in the Dane County Sheriff's Department, who provided the court with Crawford's prison record and the documents related to the investigation of the rape, Barbara Wegner, Risk Manager of Dane County, and Sheriff Richard Raemisch. On March 29, the parties stipulated and the court agreed to an extension of the deadline for a response. On April 9, K.F.P. filed a brief in opposition to defendants' motion for summary judgment. Defendants filed a reply brief on April 15. On May 21, the court granted defendants' motion for summary judgment. At no time did K.F.P. serve any interrogatories, request any depositions, or move for an extension of time pursuant to Rule 6.

## II.

As roughly explained above, K.F.P. proceeds along a theory that Dane County, its sheriff, and its prison guards violated his Eighth Amendment right to be free from cruel and unusual punishment by their "deliberate indifference" to the danger posed to other inmates by placing James Crawford in a dormitory-like setting.[2] It is incumbent upon prison officials to protect inmates from each other. *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994); *Lewis v. Richards*, 107 F.3d 549,

---

1. We take this disciplinary history from a computer print-out of the jail records, which is quite summary in nature.

2. K.F.P.'s initial complaint listed Crawford himself as a defendant. The district court rejected

any claim against him as he is not a state actor, a prerequisite for relief under 42 U.S.C. § 1983. K.F.P. does not appeal this portion of the lower court's decision.

552 (7th Cir.1997); *Langston v. Peters,* 100 F.3d 1235, 1237 (7th Cir.1996). To incur liability under a theory of deliberate indifference, however, the prison official must be shown to be "subjectively aware of the risk." *Farmer,* 511 U.S. at 828, 114 S.Ct. at 1974. This finding of individual culpability requires a showing that a prison official actually knew "that inmates face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable steps to abate it." *Id.* at 847, 114 S.Ct. at 1984. This mental state can be established through circumstantial evidence. *Id.* at 842, 114 S.Ct. at 1981 ("[A] fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

We first turn to K.F.P.'s claims against the unnamed Ferris Center employees and deputies. As explained above, a charge that an official has inflicted cruel and unusual punishment "mandate[s] an inquiry into [the] prison official[s]'[ ] state of mind." *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). Thus, to determine deliberate indifference, the court must have before it identified culprits. K.F.P.'s claim against the Doe defendants fails because he does not point the finger at any specific prison guards. Without minds to examine, we cannot conduct an individualized inquiry.[3]

■ The use of fictitious names for parties, a practice generally frowned upon, *see* 2a James Wm. Moore et al., Moore's Federal Practice para. 10.02 (2d. ed. 1995), is left within the discretion of the district court, *James v. Jacobson,* 6 F.3d 233 (4th Cir.1993). Presumably because K.F.P. was at a disadvantage in collecting information held by the Ferris Center, the district court allowed Doe defendants. Coupled with the district court's lenient decision is the understanding that K.F.P. would proceed to conduct a reasonable inquiry into the unknown defendants' identities. This court, reviewing the record, sees the names of the prison guards who chronicled the misdeeds of Crawford and the names of the prison guards interviewed after the rape of K.F.P. Surely among these are the Doe defendants K.F.P. had in mind when he filed the complaint. At some point prior to or during the pendency of defendants' dispositive motion, it became incumbent upon K.F.P. to isolate for the court which individuals knew of the threatening nature of Crawford and disregarded the danger to K.F.P. Without a showing of potential personal culpability, from which we could draw inferences in K.F.P.'s favor at this stage, K.F.P.'s claim against the Doe Defendants cannot survive summary judgment.

■ We next turn to K.F.P.'s claim against Sheriff Richard Raemisch. What distinguishes K.F.P.'s claim against the Sheriff from his claim against the prison guards is that here K.F.P. supplied a name. Nevertheless, K.F.P. failed to produce any evidence from which we could infer that the Sheriff was on notice of the danger Crawford posed to K.F.P.[4] To the opposite end, Raemisch filed an affidavit attesting to no "personal day to day involvement in the placement or classification of specific inmates," including K.F.P. and Crawford. With nothing in the record to suggest that Raemisch possessed the subjective state of mind required to show deliberate indifference, K.F.P.'s claim against the Sheriff cannot survive summary judgment.

■ Last we turn to K.F.P.'s claim against the county. Counties are liable under section 1983 only if the alleged constitutional violation results from a custom or policy, *see Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *see also Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (municipal liability for decisions of policy makers). The policy K.F.P. seeks to challenge is allegedly that of housing violent and non-violent inmates together. K.F.P. offers no evi-

---

**3.** We recognize that at the root of this absence of names is the plaintiff-appellant's failure to conduct discovery and the district court's decision to curtail the discovery period. We address the district court's discretionary decision below. Here we are reviewing *de novo* only the facts as before this court.

**4.** There is some suggestion in K.F.P.'s brief that the Sheriff should be considered a policy-maker responsible for housing violent and non-violent inmates together, as well as a supervisor who should have been aware of the specific threat of Crawford. This policy making aspect of the sheriff's role is addressed in our discussion of the county's liability, *infra.*

dence that this is an actual policy of the Ferris Center, let alone that any county official knew of a causal link between this policy and harm to inmates, see *James v. Milwaukee County*, 956 F.2d 696, 701 (7th Cir.1992).[5] Accordingly, with no evidence to construe in favor of K.F.P. on this issue, his claim against the county fails as well.

## III.

■ K.F.P. also appeals the curtailment of the discovery period, which he argues was prejudicial to his claim. This decision to cut off discovery is committed to the management skills of the district court and we review only for an abuse of discretion. *See Gary Plastic Packaging Corp. v. Merrill Lynch*, 756 F.2d 230, 236 (2d Cir.1985).

■ The briefing scheduled advised parties to file dispositive motions and responses in March 1996. Discovery was set to end in June. Having agreed to this briefing schedule, K.F.P. was on notice from the very beginning that discovery would be curtailed pursuant to any dispositive motions. Prior to the grant of summary judgment, no complaint was lodged nor was an extension of time sought. Proceeding according to this agreed upon plan was no abuse of discretion by the district court. *See, e.g., Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186, 1189 (5th Cir.1978) (discovery curtailed by summary judgment where adverse party failed to proceed promptly with discovery, some discovery had occurred, and disallowed discovery requests did not appear helpful).

One might see K.F.P.'s situation as particularly sympathetic because the curtailment of discovery, where all the critical evidence was in the hands of the party moving for summary judgment, is particularly prejudicial to the non-moving party. *See Gary Plastic Packaging Corporation v. Merrill Lynch*, 756 F.2d 230, 237 (2d Cir.1985) (summary judgment when discovery was incomplete was abuse of discretion where facts solely in control of moving party and adverse party seeking to amend complaint); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir.1984) (summary judgment where no discovery proper where no prejudice to adverse party). In our view, this imbalance in the control of evidence underscores the somewhat dilatory manner in which K.F.P.'s lawsuit appears to have proceeded. K.F.P.'s failure to even attempt to get at information in the hands of Dane County undermines any argument in this court that the district court acted precipitously.

For the foregoing reasons, we AFFIRM the decision of the district court.

---

5. The question of how *Monell*'s custom or policy requirement meshes with Farmer's requirement of subjective awareness is therefore not before us. In *James v. Milwaukee County* we held that to succeed on a claim of deliberate indifference against a county an inmate must offer "concrete proof ... to show that this policy resulted in increased inmate violence" "to demonstrate a risk substantial enough to warrant a finding of inferred knowledge." 956 F.2d at 701. We assume that this inferred knowledge would have to be attributed to a specific policy making official. *See Pembaur*, 475 U.S. at 480, 106 S.Ct. at 1298–99.